## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTOPHER DURR,     )
             )
Plaintiff,         )
             ) No. 23-CV-05211
 v.           )
             )
VERMILLION INVESTMENTS, LLC; ) Jeffrey T. Gilbert
             ) United States Magistrate Judge
and SUKHDARSHAN BEDI,   )
             )
Defendants.       )
             )
             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Durr ("Plaintiff") alleges that Defendant Vermillion Investments, LLC ("Vermillion") and Defendant Sukhdarshan Bedi ("Bedi") violated the Fair Housing Act ("FHA") (Count 1) while Plaintiff was a tenant in a condominium unit he rented from Vermillion, and that Vermillion was negligent in training and supervising Bedi, who Plaintiff alleges managed the property for Vermillion and made racially discriminatory statements to Plaintiff in that capacity (also labeled in the Complaint as Count 1). Complaint [ECF No. 1]. Vermillion filed a counterclaim against Plaintiff seeking to recover past due rent. Defendants' Counterclaim [ECF No. 12].

Presently before the Court are Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Defendants' Motion for Summary Judgment [ECF No. 67];

Plaintiff's Motion for Partial Summary Judgment [ECF No. 70]. For the reasons discussed below, Defendants' Motion for Summary Judgment is granted in part and denied in part and Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part.

## I.    BACKGROUND

The following facts are not disputed, except where otherwise noted, and are taken from the parties' Local Rule 56.1 statements of facts and/or responses thereto.[1] Vermillion is an Illinois rental property company that owns and manages approximately 40 condominiums located at 200 Willow Lane in Willow Springs, Illinois. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 1-3. Unit C-108 is one of Vermillion's condo units in Willow Springs. *Id.* at ¶¶ 4-5. From Vermillion's inception to approximately July 2023, its rental properties were managed by Virender Bedi, Defendant Sukhdarshan Bedi's wife ("Mrs. Bedi"). *Id.* at ¶¶ 6, 10. Mrs. Bedi's family, including her brother, Brijnandan Sodhi ("Dr. Sodhi"), own Vermillion and Mrs. Bedi managed Vermillion's properties under an oral agreement with her brother. *Id.* at ¶¶ 7-9. Nothing in writing limited Mrs. Bedi's authority to manage Vermillion's properties. *Id.* at ¶ 9.[2]

---

[1] *See generally* Plaintiff's Local Rule 56.1 Statement of Material Facts in Support of his Motion for Partial Summary Judgment [ECF No. 72] ("Plaintiff's SOMF"); Defendants' Statement of Material Facts [ECF No. 69] ("Defendants' SOMF"); Defendants' Response to Plaintiff's SOMF [ECF No. 78] (Defendants' Resp. to Plaintiff's SOMF"); Defendants' Additional Statements of Fact [ECF No. 79] ("Defendants' SOAF"); Plaintiff's Response to Defendants' SOMF [ECF No. 81] ("Plaintiff's Resp. to Defendants' SOMF"); Plaintiff's Response to Defendants' SOAF [ECF No. 88] ("Plaintiff's Resp. to Defendants' SOAF").

[2] The facts as to whether Bedi is also part owner of one percent of Vermillion are unclear and Plaintiff does not assert that this is an undisputed fact. *See generally* Plaintiff's SOMF [ECF

Plaintiff Christopher Durr is Black. *See* Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 18. Mrs. Bedi had a road sign put up to find potential tenants with Bedi's phone number listed and the message "For Rent." Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 15-16. Plaintiff saw the sign, called the number listed on the sign, and rented Unit C-108, one of Vermillion's condo units in Willow Springs, from Vermillion beginning in 2017 or 2018. *Id.* at ¶¶ 17, 19-20; Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶ 1.

Mrs. Bedi communicated with Plaintiff via text messages about maintenance for his rental apartment, his rent payments, and a fine related to leaking oil from a vehicle. *See* Plaintiff's Resp. to Defendants' SOAF [88] at ¶¶ 14-18 and attached exhibits. Mrs. Bedi did not speak to Plaintiff at any time by phone. *Id.* at ¶ 9. In a text message Plaintiff sent to Mrs. Bedi on November 14, 2021, Plaintiff said Mrs. Bedi's message to him was "racist as hell." *Id.* at ¶ 17. Plaintiff asked Mrs. Bedi to have her husband contact Plaintiff "from now on." *Id.* at ¶ 13. Plaintiff also accused others in the apartment complex of racism. *Id.* at ¶¶ 15-16, 19.

From at least 2018 through 2023, Mrs. Bedi on occasion got her husband, Bedi's, help with the Vermillion properties including to deal with maintenance issues and communicate with tenants. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 11, 13. Bedi was not an employee of Vermillion in the sense of having an employment contract or being paid W-2 wages. Plaintiff's Response to Defendants'

---

No. 72]; *see also* Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at (citing Bedi's testimony in another lawsuit, [ECF No. 72-4], that he is a part-owner of Vermilion).

SOMF [ECF No. 81] at ¶ 14. Although Defendants "strictly" deny that Bedi helped manage Vermillion's properties, they admit Mrs. Bedi "appears to have gotten Sukhdarshan Bedi's help on occasion, akin to an independent contractor." *See id.* at ¶ 11. Another tenant, Steve Young, says he received a tour of the property from Bedi before Young moved in, submitted his rental application to Bedi, paid his rent by sending checks to Bedi's address, and contacted Bedi about maintenance issues, lease renewals, rent and to discuss moving out. *Id.* at ¶¶ 22-26.[3]

Mrs. Bedi asked her husband, Bedi, to help communicate with Plaintiff about his tenancy. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 31. Plaintiff says he "communicated with [Bedi] about rent, maintenance, and other issues related to his rental," citing Plaintiff's signed declaration stating he "dealt with [Bedi] to view the property, submit an application, sign a lease, pay my rent, for maintenance issues." Plaintiff's SOMF [ECF No. 72] at ¶¶ 27-28 and [ECF No. 72-10]. Plaintiff believed Bedi was his landlord. *Id.* He communicated with Bedi by email as shown by emails between Plaintiff and an account attributed to "Shan Bedi." Plaintiff's SOMF

---

[3] Plaintiff provides a signed declaration from Mr. Young. Plaintiff's SOMF [ECF No. 72-7]. Defendants do not cite evidence to contradict Mr. Young's declaration, nor do they argue that Mr. Young lacks personal knowledge of the stated facts. *See*, *e.g.*, FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Corbin v. Jensen*, 2025 WL 3033476, at *3 (N.D. Ind. Oct. 29, 2025) ("'the form produced at summary judgment need not be admissible' and the Court may consider statements made in sworn declarations and affidavits at summary judgment rather than strictly relying on depositions or prior trial testimony," citing and quoting *Cairel v. Alderden*, 821 F.3d 823, 830–31 (7th Cir. 2016)). In addition, although Defendants object without further explanation that Mr. Young's statements are hearsay, that does not appear to be the case, at least to the extent Mr. Young's statements provide a summary of his own actions.

[ECF No. 72] at ¶ 28 and [ECF No. 72-9]. Defendants admit Plaintiff and Bedi communicated via text messages but otherwise object to the contents of the emails as inadmissible hearsay. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 28. Mrs. Bedi also asked Bedi to help her to get Plaintiff to pay his rent to Vermillion, although she did not ask Bedi to regularly collect rent checks from Plaintiff. *Id.* at ¶ 32; Plaintiff's Resp. to Defendants' SOAF [ECF No. 88] at ¶ 20. Mrs. Bedi acknowledged that she knew Bedi would communicate with Plaintiff when she asked Bedi for help communicating with Plaintiff about his rent payments. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 32-33.[4]

Between February 2022 and November 2022, Bedi and Plaintiff exchanged various text messages. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 39-55. On February 20, 2022, Plaintiff sent Bedi a text message stating Bedi was a "Racist piece of s**t" and that he would be suing. Plaintiff's Resp. to Defendants' SOAF [ECF No. 88] at ¶ 18. Bedi's text messages to Plaintiff reference eviction and make repeated derogatory references to Plaintiff's race and more generally about how African

---

[4] Plaintiff says it is undisputed that Bedi "also communicated with others about [Plaintiff's] tenancy" and attaches emails from an account attributed to "Shan Bedi" and a condo board member reflecting communications in 2021 about a dispute related to where Plaintiff parked his truck. Plaintiff's SOMF [ECF No. 72] at ¶¶ 34-38 and [ECF No. 72-9]; Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 35-38. Defendants object that the email communications between Bedi and a condo board member (as well as between Bedi and Plaintiff) are hearsay but "[t]o be considered on summary judgment, evidence must be admissible at trial, though the form produced at summary judgment need not be admissible." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017). To the extent Plaintiff references these emails to show Bedi communicated with him or with a condo board member about disputes related to Plaintiff's tenancy, they potentially could be admissible at trial under an exception to the hearsay rule other than for the truth of the matters asserted in the emails.

Americans and Black people behave and how they treat Asian people, including, for example, the following messages in 2022:

- March 1, 2022: "Mr Durr. You have very uncooperative . Do not treat me as a minority Asian to scam me and over power me to cheat and beat me up like many African Americans do to Asians.";

- March 28, 2022: "I am sorry to say that all my eviction case are African Americans who do not pay.";

- March 30, 2022: "I think I have a problem with you and many African Americans who do not pay in tile (sic) always not truthful."

- March 31, 2022: "Please get out. I cannot baby sit you your responsibilities. It is not racist but you African American thinks that like government , Walmart all land lords should give every thing free."

- August 3, 2022: "You all blacks wants free and kill, Rob people."

- August 5, 2022: "Please get out , you have destroyed me, condo, and worse of all bad name and reputations to black race, . . ."

- August 8, 2022: "You will not understand neither African Americans. They had more opportunities and assistance and representations, if I was black in America the charges I had, and I pleaded to Obama with my case, he did not care because I was not black , backs are as racist as you are to destroy a Asian man and black criminals hitting, killing, looting Asians and minority businesses. I know you have this job with rail roads because you are African American, you are privileged more than whites in this country because all African Americans do not go to jail any more for crimes they commit. And you are doing same but you do not give a damm."

- August 8, 2022: "Blacks are as racist as you are to destroy a Asian man and black criminals hitting, killing, looting Asians and minority businesses."

- August 8, 2022: "[Y]ou are privileged more than whites in this country because all African Americans do not go to jail any more for crimes they commit. And you are doing same but you do not give a damn."

- October 17, 2022: "Mr. Durr did you talk to your uncle, Jessie Jackson, what he thought of you cheating, stealing from

6

businesses .. I wish there was some BLACK leader like Mr. Martin Luther King can be a leader of the BLACKS and his dreams of having these BLACKS do not kill, cheat, steal, pay their rents, do not lie, or beat up innocent American citizens. Mr. Durr. Blacks will destroy this Great country, if they do not have a strong leader."

- November 5, 2022: "America is a sad country and embarrassment in the world because of what African Americans do and other countries sees as blacks beating, looting, killing."

- November 5, 2022: "Mr. Durr, I do not know why you or African Americans do not think right. You never your bills, rent, committing crimes, cheating people, looting stores, street crimes, I am not afraid of my death by you or other blacks, but you guys should think of hard working people who are losing everything because of crimes committed by African Americans."

Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 39-55.

At her deposition, Mrs. Bedi testified she had not previously seen Bedi's text messages to Plaintiff, and Vermillion testified, through its Rule 30(b)(6) witness, that it knew nothing about Bedi communicating with Plaintiff via text messages. Defendants' SOMF [ECF No. 69] at ¶¶ 15, 21; Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶¶ 15, 21.

On June 30, 2022, Vermillion filed an eviction complaint against Plaintiff in the Circuit Court of Cook County. Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶ 5. Vermillion sought an award of $19,435 in back rent. Defendants Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 57, 64. Bedi served the Landlord's Five Day Notice of the eviction on Plaintiff and signed that form, which identified Bedi as the agent of the landlord. Defendants Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 57-60. Vermillion's eviction attorney also referred to Bedi as an "agent[] of Vermillion Investments LLC" in a letter sent in response to a subpoena in this litigation.

7

Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 62. Other eviction filings by Vermillion in the state court litigation identify Bedi as the plaintiff or as Vermillion's managing member. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 61 (acknowledging "the documents state what they state" but disputing knowledge of whether Bedi signed the filings).

The Cook County court issued a ruling on May 2, 2023 ordering Plaintiff to pay to Vermillion $2,905 and costs of $656.47. *See* Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶¶ 5, 7; Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 67. The Cook County court rejected Plaintiff's affirmative defenses based on plumbing issues and also found Plaintiff had moved out of the rental apartment, making an eviction order moot. *See* Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶¶ 5-7; Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 65. The Cook County court opinion described Plaintiff's affirmative defenses as constructive eviction and breach of quiet enjoyment. Plaintiff's Resp. to Defendants' SOAF [ECF No. 88] at ¶ 23. There was no mention of racial harassment in the order. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 66.

Bedi is now deceased. *See* Suggestion of Death and Motion to Substitute [ECF Nos. 8, 22]. Before he died, no doctor diagnosed Bedi as mentally incompetent, no court adjudicated him as unfit to handle his own medical, legal or financial affairs, and his wife never took any steps to take control over his medical, legal or financial affairs. *See* Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶ 4; Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 80.

## II.    THE PARTIES' CLAIMS

The Complaint alleges Bedi engaged in discriminatory housing practices in violation of the Fair Housing Act including hostile environment housing harassment, citing 42 U.S.C. §§ 3604(b) & (c) and 24 C.F.R. § 100.600(a)(2), as well as discriminatory statements in violation of 42 U.S.C. § 3604(c) and 24 C.F.R. § 100.75. Complaint [ECF No. 1]. The Complaint alleges Vermillion is vicariously liable for Bedi's alleged discriminatory housing practices pursuant to 24 C.F.R. § 100.7(a)(ii) and (b). *Id.* Plaintiff also alleges a state law negligence claim against Vermillion based on its alleged failure to exercise reasonable care in hiring, training, and supervising Bedi. *Id.* Defendants raise five affirmative defenses (First Amendment, statute of limitations, diminished capacity, failure to exhaust administrative remedies, and *res judicata*). Vermillion also filed a counterclaim seeking to recover the backpay that the state court awarded in the eviction case. *See* Answer [ECF No. 11]; Counterclaim [ECF No. 12].

## III.    THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment as to both of Plaintiff's claims. Motion for Summary Judgment [ECF No. 67]; Memorandum in Support of Motion for Summary Judgment [ECF No. 68] ("Defendants' Motion"). Plaintiff moves for partial summary judgment as to both Defendants' liability for the discriminatory statement claim pursuant to Section 3604(c), as well as on all five of Defendants' affirmative defenses and Vermillion's counterclaim. Plaintiff's Motion for Partial Summary

Judgment [ECF No. 70]; *see also* Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment [ECF No. 71] ("Plaintiff's Motion").

## A. The Court Grants Defendants' Motion for Summary Judgment On Plaintiff's State Law Negligence Claim

Defendants seek summary judgment on Plaintiff's state law negligence claim for two reasons. First, Defendants say Plaintiffs fail to identify evidence in support of the required elements of a state law negligence claim, including proximate cause and damages. Defendants' Motion [ECF No. 68] at 10-11. Defendants also argue that because Bedi is deceased, his alleged texts, which Defendants say form the basis of the negligence claim, are barred from admission by the Illinois Dead Man's Act. *Id.* at 11-12. Plaintiff does not contest summary judgment in Defendants' favor on the negligence claim nor does Plaintiff dispute the evidentiary shortcomings identified in Defendants' Motion. Plaintiff's Opposition to Defendants' Motion for Summary Judgment [ECF No. 80] ("Plaintiff's Response") at 3 n.1. Accordingly, the Court grants Defendants' Motion for summary judgment as to Plaintiff's negligence claim.[5]

## B. The Court Denies the Parties' Cross Motions for Summary Judgment on Plaintiff's Fair Housing Act Claims

Defendants seek summary judgment on Plaintiff's Fair Housing Act claims. Defendants' Motion [ECF No. 68] at 4-10. As to the discriminatory statement claim,

---

[5] Plaintiff notes Illinois law and the Dead Man's Act does not apply to his federal Fair Housing Act claims and does not bar admission of Bedi's text messages for purposes of the federal claims. Plaintiff's Response [ECF No. 80] at 3 n.1 (citing *Flournoy v. Est. of Obaisi*, 2020 WL 5593284, at *3 (N.D. Ill. Sept. 18, 2020)). Defendants do not dispute that federal, rather than Illinois law, will determine the admissibility of Bedi's text messages and do not otherwise address the admissibility of the text messages. *See* Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment [ECF No. 86] ("Defendants' Reply").

Defendants say summary judgment is warranted because there is no evidence that either Vermillion or Bedi engaged in discriminatory advertising. *Id.* at 4-6. Defendants also argue Bedi's text messages to Plaintiff were made "post-acquisition" of the rental apartment and during Plaintiff's ongoing tenancy and therefore they say the text statements are not actionable as discriminatory statements made "with respect to" Plaintiff's rental as required by Section 3604(c). *See* Defendants' Reply [ECF No. 86] at 2-6.

With respect to Plaintiff's claim arising under Section 3604(b), Defendants argue summary judgment is appropriate because there is no evidence Vermillion refused to rent to Plaintiff and because Plaintiff was eventually evicted for his failure to pay rent. Defendants' Motion [ECF No. 68] at 6. In Reply, Defendants argue any potential Section 3604(b) claim is "now closed" to Plaintiff because he disavows making a constructive eviction claim. *See* Defendants' Reply [ECF No. 86] at 5. Defendants also say Plaintiff's "habitability" claims related to plumbing problems in his unit are barred by *res judicata*, *Rooker-Feldman*, and by the statute of limitations, because Plaintiff filed an affirmative defense raising such complaints in the Cook County eviction proceeding and the court there rejected that defense. Defendants' Motion [ECF No. 68] at 6-7. Finally, Defendants say summary judgment should be granted on Plaintiff's claims seeking recovery against Bedi's estate because the estate has no liability insurance. *Id.* at 12-13.

Plaintiff moves for partial summary judgment as to liability on the ground that Bedi's statements violate Section 3604(c). Plaintiff's Motion [ECF No. 70] at 3-8.

11

Plaintiff argues the prohibition against discriminatory housing practices in the Fair Housing Act is not "just about advertising" but more broadly applies to harassing statements like those allegedly made by Bedi during the course of a tenant's rental of an apartment. *Id.* at 3. Plaintiff says summary judgment is warranted as to Bedi because there is no dispute that he made discriminatory statements in his text messages to Plaintiff. *Id.* at 4-8. Plaintiff also argues Bedi's text messages satisfy the "with respect to" a rental requirement of Section 3604(c) because this language "is a low bar, meant only to exclude statements that have nothing to do with housing" and because Bedi was acting as a property manager his statements were "made 'by a person engaged in the sale or rental of a dwelling'," as required by the regulations. *Id.* at 5 (citing 24 C.F.R. § 100.75(b)). Plaintiff also seeks summary judgment on Defendants' affirmative defenses with respect to the Fair Housing Act claims as well as Defendants' counterclaim seeking recovery of the backpay awarded by the Cook County eviction court. *Id.* at 13-19.

As addressed later in this Opinion, both parties seek summary judgment as to Vermillion's vicarious liability for Bedi's conduct.

**1. The Court denies summary judgment for both parties on the Fair Housing Act claims based on Bedi's alleged discriminatory statements.**

Plaintiff alleges Defendants engaged in discriminatory housing practices in violation of the Fair Housing Act. [ECF No. 1] at ¶¶ 27-30. "'Discriminatory housing practice' means an act that is unlawful under section 3604, . . . or 3617 of this title." 42 U.S.C.A. § 3602; *see also* Plaintiff's Motion [ECF No. 71] at 3. The Complaint identifies two types of discriminatory housing practices: hostile environment housing

harassment based on race, citing 42 U.S.C. §§ 3604(b) & (c) and 24 C.F.R. § 100.600(a)(2), and discriminatory statements, citing 42 U.S.C. § 3604(c) and 24 C.F.R. § 100.75. [ECF No. 1] at ¶¶ 27-30.

As the parties' briefing focuses on the discriminatory statements claim, the Court addresses this claim first. Under the Fair Housing Act, it is unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). The "prohibitions in § 3604(c) extend to oral statements by person engaged in sale or rental of dwelling." *See White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 904 (7th Cir. 2007) (citing 24 C.F.R. § 100.75(b) (2006)). "The United States Department of Housing and Urban Development ('HUD') has issued a regulation construing Section 3604(c) as applying to '[w]ritten notices and statements includ[ing] any applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling.'" *Chicago Lawyers' Comm. For C.R. Under The L., Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 687 (N.D. Ill. 2006), *aff'd sub nom. Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), *as amended (*May 2, 2008) (citing 24 C.F.R. § 100.75).

Plaintiff's Motion as to the discriminatory statements claim is based on a series of text messages sent by Bedi to Plaintiff between February and December 2022. *See*

13

Plaintiff's SMOF [ECF No. 72] at 39-56; Defendants Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 39-56. Defendants argue Section 3604(c) "applies only to pre-acquisition notices, statements or advertisements" and summary judgment is warranted because Bedi's text messages were neither advertisements nor pre-acquisition statements about a rental. Defendants' Response to Plaintiff's Partial MSJ [ECF No. 77] at 2; Defendants' Motion [ECF No. 68] at 4-5. Defendants primarily rely on the Seventh Circuit's decision in *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004). *See* Defendants' Response to Plaintiff's Partial MSJ [ECF No. 77] at 2-3. According to Defendants, *Halprin* holds Section 3604 is concerned exclusively with discrimination in access to housing and "covers only pre-rental (pre-acquisition) conduct, not post-acquisition conduct." *Id.* at 2-3. In Defendants' view, because all the texts occurred years after Plaintiff began renting the unit from Vermillion, those statements are not actionable under the Fair Housing Act. *Id.*

Plaintiff, in turn, seeks partial summary judgment as to Bedi's liability for the text message statements and contends the statute's prohibition against discriminatory housing practices is not "just about advertising" but more broadly applies to harassing statements like those made by Bedi, even where those statements were made post-acquisition of a rental apartment. Plaintiff's Motion [ECF No. 70] at 3. Plaintiff's Reply in Support of his Motion for Partial Summary Judgment [ECF No. 87] ("Plaintiff's Reply") at 2-3. Plaintiff argues Defendants misapprehend

14

the significance of *Halprin* and that the Seventh Circuit narrowed the holding in *Halprin* in subsequent decisions. *See* Plaintiff's Reply [ECF No. 87] at 2-3.

As an initial matter, the Court agrees with Plaintiff that Section 3604(c) is not limited to advertising. On its face, Section 3604(c) encompasses making discriminatory statements in addition to printing or publishing discriminatory advertisements or notices. *See* 42 U.S.C. § 3604(c).

Moreover, the Court finds Bedi's text statements are potentially actionable under the Fair Housing Act notwithstanding that they were made several years into Plaintiff's tenancy. Defendants overstate the significance of *Halprin*. In *Halprin*, the Seventh Circuit reasoned "[t]he Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but access to housing" and therefore "section 3604 is not addressed to post-acquisition discrimination." *See id.*, 388 F.3d at 328–30. As an initial matter, the factual circumstances in *Halprin* are distinguishable from those here. In *Halprin*, the plaintiffs complained "about being harassed by other property owners" and the Seventh Circuit voiced concern that "quarrels between neighbors did not become a routine basis for federal litigation." *Id.* By contrast, Plaintiff does not challenge a neighbor's statements here. Rather, Plaintiff challenges statements made by the husband (Bedi) of Vermillion's property manager who allegedly provided property management services for Plaintiff's rental unit and allegedly acted as a landlord or property manager, including ultimately serving an eviction notice on Plaintiff. *See*, *e.g.*, Plaintiff's SMOF [ECF No. 72] at ¶¶ 7-8, 10-14, 21-38, 59-62.

Defendants also improperly cite, in the Court's view, the Seventh Circuit's decision in *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) as extending "even further" *Halprin's* holding limiting Section 3604 to post-acquisition conduct. *See* Reply [ECF No. 86] at 4. Taken in full context, *Bloch* states both Section 3604 of the Fair Housing Act as well as Section 3617 of the Act can apply, at least in certain circumstances, to post-acquisition discriminatory conduct. *See Bloch*, 587 F.3d at 782. In *Bloch*, the Seventh Circuit rejected the defendants' reliance on *Halprin* for the broad proposition "that the [Fair Housing Act] does not reach any claims of post-acquisition discrimination" and narrowed *Halprin's* holding. *Id.*, 587 F.3d at 779–81. As the Seventh Circuit reaffirmed in subsequent decisions, "the protections afforded by the Fair Housing Act do not evaporate once a person takes possession of her house, condominium, or apartment." *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861–62 (7th Cir. 2018) (citing *Bloch*, 587 F.3d 771 (7th Cir. 2009) (*en banc*)); *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 480 (7th Cir. 2025) ("Section 3604's protections apply even after an individual has purchased a home or rented an apartment," citing *Wetzel*, 901 F.3d at 861). The Seventh Circuit also clarified in *Wetzel* that the specific types of post-acquisition conduct at issue in *Bloch* are not "the exclusive set of post-acquisition claims that would be possible under section 3604(b)." *See id.*, 901 F.3d at 866–67. Although *Bloch* and its progeny do not directly address claims based on discriminatory statements arising under Section 3604(c) of the Fair Housing Act, based on the reasoning in those decisions at least one court in this district has recognized the viability at the pleading stage of claims under Section

16

3604(c) that were based on post-acquisition conduct. *See Herbster v. 3550 Condo. Ass'n*, 2018 WL 11472437, at *3–6 (N.D. Ill. July 31, 2018).[6]

Plaintiff also cites decisions from other districts that similarly find Section 3604(c) encompasses post-acquisition discriminatory statements. *See United States v. Space Hunters, Inc.*, 429 F.3d 416, 424–25 (2d Cir. 2005) (addressing scope of Section 3604(c) and finding "[n]othing in this language limits the statute's reach to owners or agents *or to statements that directly effect a housing transaction*. . . Moreover, the district court's view that section 804(c)'s [section 804(c) of the Fair Housing Act, 42 U.S.C. § 3604(c)] purpose is to 'prevent expressions that result in the denial of housing' is too narrow. The statute also 'protect[s] against [the] psychic injury' caused by discriminatory statements made in connection with the housing

---

[6] In *Herbster*, the Court, analyzing the plaintiffs' claim under Section 3604(c), concluded "*Bloch* holds that the statute reaches post-acquisition discriminatory conduct in two 'limited circumstances': (1) 'when the post-acquisition conduct 'makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction,' . . . and (2) 'where the post-acquisition conduct of which the plaintiffs complained is based on a rule promulgated pursuant to specific agreements to which plaintiffs were required to bind themselves at the time of acquisition of their unit' " *Herbster*, 2018 WL 11472437, at *3. The court had previously dismissed the plaintiffs' Section 3604(c) claim based on statements made by the defendants' representatives 21 days after the plaintiffs had moved into their rental unit. *Id.* at *3-4. The court subsequently held plaintiffs' amended Section 3604(c) claims survived a motion to dismiss under the second prong in *Bloch*, reasoning the plaintiffs adequately alleged the post-acquisition conduct violated rules plaintiffs agreed to at the time they rented their unit. *Id.* As noted above, the Seventh Circuit has since clarified that the specific categories of conduct enumerated in *Bloch* are not the only post-acquisition conduct that could be actionable under Section 3604(b). *See Wetzel*, 901 F.3d at 866–67 ("St. Andrew reads *Bloch* as identifying the exclusive set of post-acquisition claims that would be possible under section 3604(b). But we said no such thing. Instead, as courts do, we were addressing the case before us, and so we simply noted that those were "two possibilities for relief in [the present] case."). Defendants do not address these post-*Halprin* decisions by the Seventh Circuit, nor do Defendants explain why Section 3604(c) should be interpreted as strictly limited to only pre-acquisition statements in light of the Seventh Circuit decisions rejecting such a narrow interpretation of other clauses of Section 3604 of the Fair Housing Act.

market.") (emphasis added); *Glagola v. MacFann*, 701 F. Supp. 3d 274, 282 (W.D. Pa. 2023) (reversing magistrate judge grant of motion to dismiss on Section 3604(c) claim premised on pattern of harassing statements); *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 566–67 (E.D.N.Y. 2007) ("section 3604(c)'s protections are not limited to housing transactions or to prospective tenants").[7]

Defendants cite no cases in which courts granted summary judgment denying a Section 3604(c) claim in factual circumstances like those present here. For instance, Defendants rely on *Small v. The Anchorage Homeowners Ass'n, LLC*, 2019 WL 1317636, at *1-2, *5 (S.D. Ind. Mar. 21, 2019), *see* Defendants' Resp. [ECF No. 77] at 4, but not only was *Small* decided at the pleading stage, it is also factually distinguishable because it involved discriminatory statements made by the plaintiff's neighbor. *Small*, 2019 WL 1317636, at *5 ("[t]he mere fact that [neighbor] was a realtor does not mean every statement she makes is an advertisement connected to a sale or rental"); *see also Fair Hous. Ctr. of Cent. Indiana, Inc. v. New*, 577 F. Supp. 3d 908, 925 (S.D. Ind. 2021) (citing *Small*, 2019 WL 1317636, at *5 and granting summary judgment for defendant in case involving discriminatory statements made by plaintiff's neighbor, noting "there is nothing that raises even an inference that [defendant's] statements were made in connection with the sale or rental of a dwelling"). *Cf. Halprin*, 388 F.3d at 328–30 (expressing concern that "quarrels

---

[7] *See*, *e.g.*, *Watson v. Vici Cmty. Dev. Corp.*, 2022 WL 910155, at *2 (W.D. Okla. Mar. 28, 2022) ("Despite defendants' suggestions to the contrary, section 3604(c) protects 'not only prospective tenants, but also existing ones'") (internal citations omitted); *Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *6–7 (S.D. Cal. Feb. 1, 2019) ("Section 3604(c) protects not only prospective tenants, but existing ones as well").

between neighbors did not become a routine basis for federal litigation" under the Fair Housing Act).

Here, although Defendants dispute that Bedi was employed or authorized by Vermillion to engage in property management services, Plaintiff provides evidence that Bedi helped his wife, Vermillion's property manager, with various tasks at Vermillion's properties and Plaintiff argues this evidence shows Bedi therefore functioned as a property manager. Bedi's allegedly discriminatory statements include statements that Plaintiff should "get out" and make other references to eviction and rent payments. Those statements were also made coincident with Vermillion's eviction action against Plaintiff by someone who a jury might find acted as a property manager or the property manager's agent while sending those messages. Such statements could be interpreted by a jury as related to Plaintiff's tenancy within the meaning of the Fair Housing Act. The evidence thus raises a factual dispute about the extent to which Bedi, the husband of Vermillion's property manager, was involved in the rental business and/or had control or authority over Plaintiff's tenancy, and thus, whether Bedi's statements were made with respect to Plaintiff's rental. In light of the Seventh Circuit's recognition that Fair Housing Act claims can, at least in certain circumstances, encompass post-acquisition discriminatory conduct, the Court denies Defendants' Motion to the extent it is premised on the argument that the alleged discriminatory statements by Bedi are not actionable under Section 3604(c).[8]

---

[8] Defendants also cite *Ross v. Midland Mgmt. Co.*, 2003 WL 21801023, at *4 (N.D. Ill. Aug. 1, 2003), but this decision, also at the pleading stage, addresses claims under Section 3604(a) and does not address the scope of the "with respect to" language in Section 3604(c). *Fair Hous. Ctr. of Cent. Indiana v. MH Leasing, LLC*, 2017 WL 9531996, at *8 (S.D. Ind. May 11, 2017),

Defendants' Motion as to Bedi's statements fails for an additional reason. Defendants acknowledge that claims under Section 3617 "can reach post-acquisition conduct, not just the initial sale or rental of housing" but say the Complaint did not allege a violation of Section 3617. *See* Defendants' Reply [ECF No. 86] at 9-10. In essence, Defendants argue Plaintiff cannot belatedly invoke Section 3617 in support of claims based on post-acquisition discriminatory statements because Plaintiff did not expressly plead a claim under Section 3617. *See* Defendants' Response to Plaintiff's Partial MSJ [ECF No. 77] ("Defendants' Response") at 1 ("The complaint does not allege a § 3617 violation.").

Plaintiff concedes he does not have a "stand-alone § 3617 claim" but says he pled a hostile environment harassment claim which is also actionable under Section 3617. Plaintiff's Reply [ECF No. 87] at 1; Plaintiff's Response [ECF No. 80] at 5 (Plaintiff "invoked § 3604(b) to support his hostile environment harassment claim . . . along with §§ 3604(c), 3617 . . ."). Plaintiff "alleged a hostile environment claim in his complaint, citing a regulation that delivers the controlling standard, 24 C.F.R. § 100.600(a)(2). . . That regulation formalized what caselaw had long held, that hostile environment harassment violates the Act because it can violate § 3617 and other parts of the statute." Plaintiff's Reply [ECF No. 87] at 1-2 (citing

_____

*report and recommendation adopted as modified*, 2017 WL 3187471 (S.D. Ind. July 26, 2017) is a summary judgment decision that does grant judgment in favor of defendants on a Section 3604(c) claim, but in the distinguishable circumstances where the court found "[a]n ordinary reader" would find a housing community's rules prohibiting children from playing in the street or using the pool unsupervised to be "typical safety rules common in communities throughout the district" and therefore there was no evidence of a violation of Section 3604(c). This decision does not support Defendants' argument that summary judgment should be granted here because Bedi's statements were not made with respect to Plaintiff's rental.

https://www.federalregister.gov/d/2016-21868/p-35). *See also* Plaintiff's Resp. to Defendants' SOAF [ECF No. 88] at ¶ 21 (disputing that Plaintiff's Complaint did not allege "Defendants attempted to coerce, intimidate, threaten, or interfere with [Plaintiff] in the exercise or enjoyment of his rental of C-108" because "the allegations in support of the housing harassment claim allege coercion, intimidation, and interference"). For this reason, Plaintiff says his reference to Section 3617 as part of the basis for his hostile environment claim "didn't add anything new." *Id.* at 2.

The Court agrees that although the Complaint did not cite Section 3617, Plaintiff pled facts supporting a hostile environment harassment theory of discrimination under the Fair Housing Act, which includes claims arising under Section 3617. Plaintiff alleges Defendants engaged in discriminatory housing practices in violation of the Fair Housing Act. [ECF No. 1] at ¶¶ 27-30. "'Discriminatory housing practice' means an act that is unlawful under section 3604, . . . or 3617 of this title." 42 U.S.C.A. § 3602; *see also* Plaintiff's Motion [ECF No. 71] at 3. In addition, the Complaint identifies hostile environment housing harassment based on race as a form of discriminatory housing practice, citing 42 U.S.C. §§ 3604(b) & (c) and 24 C.F.R. § 100.600(a)(2). [ECF No. 1] at ¶¶ 27-30.

"[N]otice pleading does not require that [a plaintiff] identify in his complaint the specific statutes or regulations he argues the defendants violated." *See Cox v. United States Dep't of Just.*, 2024 WL 4635241, at *2 (7th Cir. Oct. 31, 2024) (citing *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022)); *see also Elliott v. QF Circa 37, LLC*, 2018 WL 2933467, at *18 (S.D. Cal. June 12, 2018) (rejecting defendants

summary judgment argument that plaintiff had not pled a claim under Section 3604(c) "because the factual allegations gave Defendants notice of Section 3604(c) claims"). Here, the regulations cited in the Complaint state "hostile environment harassment because of race, color, religion, sex, familial status, national origin or handicap may violate" Section 3604 as well as Section 3617 (among other statutory provisions) "depending on the conduct" and "[t[he same conduct may violate one or more of these provisions." 24 C.F.R. § 100.600(a). Specifically with respect to hostile environment harassment, one of the discriminatory housing practices alleged by Plaintiff, the regulation provides:

> Hostile environment harassment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction. Hostile environment harassment does not require a change in the economic benefits, terms, or conditions of the dwelling or housing-related services or facilities, or of the residential real-estate transaction.

24 C.F.R. § 100.600(a)(2). As this description makes clear, post-acquisition conduct can form the basis of a hostile environment harassment claim like that alleged by Plaintiff. In short, Defendants were on notice that Plaintiff alleged a hostile environment harassment claim under the Fair Housing Act based on Bedi's statements made during Plaintiff's tenancy.

Defendants also say any attempt by Plaintiff to pursue a claim based on Bedi's post-acquisition conduct fails because Plaintiff does not claim constructive eviction. *See* Defendants' Reply [ECF No. 86] at 4-5, 9-10. Plaintiff acknowledges he does not

allege constructive eviction (or raise such a claim under Section 3604(a)), but the Seventh Circuit has explained "§ 3617 reaches a broader range of post-acquisition conduct. A claim for coercion, intimidation, threats, and interference with or on account of plaintiff's § 3604 rights does not require that the plaintiff actually vacate the premises." *Bloch*, 587 F.3d at 782–83; *Farhan*, 161 F.4th at 480 ("Homeowners and renters also have post-acquisition protections under § 3617 of the FHA . . ."). "HUD's regulations confirm that § 3617 can, in appropriate circumstances, apply to post-acquisition discrimination that does not result in eviction." *Bloch*, 587 F.3d at 782–83*; see also David v. Whittaker*, 2024 WL 4512407, at *5–7 (N.D.N.Y. Oct. 17, 2024) (describing *Bloch* as holding "§ 3617 claims for a hostile housing environment do not require proof of constructive eviction" and "requiring plaintiffs to establish constructive eviction was contrary to the statutory purpose of the Fair Housing Act").

Rather, a Section 3617 claim can be premised on "a 'pattern of harassment, invidiously motivated.'" *Bloch*, 587 F.3d at 782–83 (citing *Halprin,* 388 F.3d at 330 and *DiCenso v. Cisneros*, 96 F.3d 1004, 1006 (7th Cir. 1996)). "[R]epeated use of racist language is the quintessential example of interference that establishes 'a 'pattern of harassment, invidiously motivated" and "a reasonable factfinder could conclude" such a "pattern of harassment interfered with the [plaintiffs'] post-acquisition enjoyment of their property, even if the [defendants] could not or did not actually force the [plaintiffs] to leave." *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 787 (7th Cir. 2022). Moreover, there is a factual dispute in this case over whether and to what extent Bedi exercised authority over Plaintiff's tenancy and "it stands to

reason that the behavior of a defendant who exercises authority over a plaintiff's housing rights would also bear more consideration in a fair housing case." *See Watters,* 48 F.4th at 787-88 ("A reasonable factfinder can infer that being treated with racial disdain and hostility by the head of the HOA and his wife, who herself held the same position only recently, can directly affect how safe a family feels in their own home. More importantly, as discussed above, a reasonable factfinder can infer that the Mamarils' repeated harassment undermined the Watters' ability to enjoy the basic living conditions one expects when they purchase a home.").

Courts have also found the same post-acquisition statements that give rise to a Section 3604(c) claim also can form the basis of a Section 3617 hostile environment claim. *See Glagola*, 701 F. Supp. 3d at 278-79, 280-82 (landlord's ongoing sexually harassing statements, including demands for sex in exchange for rent payments, supported a claim under Section 3604(c) for discriminatory statements as well as for a hostile environment under Section 3617) ("a hostile environment claim 'does not require a change in the economic benefits, terms, or conditions of the dwelling'; interference with the tenant's use or enjoyment of a dwelling is enough on its own."). Indeed, "a claim alleging a post-acquisition pattern of harassment can proceed under section 3617 even if there is no route for relief under section 3604." *See Wetzel*, 901 F.3d at 866 (citing *Halprin*, 388 F.3d at 330).

For all these reasons, the Court finds Plaintiff's hostile environment harassment claim based on post-acquisition statements is actionable under the Fair

24

Housing Act, including Section 3617, and denies Defendants' Motion premised on the argument that such statements are not actionable.

Although the Court finds Plaintiff's evidence is sufficient to defeat Defendants' Motion for summary judgment on the discriminatory statements claim, the Court also denies Plaintiff's Motion for summary judgment on liability based on Plaintiff's argument that there is no factual dispute as to whether Bedi's statements violate Section 3604(c).[9] For the reasons discussed above, there are disputed questions of fact as to whether Bedi's statements were made "with respect to" Plaintiff's rental. Plaintiff says the "with respect to" language is a "low bar" and is satisfied when the statements at issue are made by "property managers" like Bedi. Plaintiff's Motion [ECF No. 71] at 5. As discussed above, however, whether Bedi can be considered to be a property manager is a disputed fact question. Moreover, the decisions Plaintiff cites where summary judgment is granted on a Section 3604(c) claim do not involve factual circumstances analogous to those here, nor did those cases involve any dispute about whether statements were made with respect to a rental or sale. *See* Plaintiff's Motion [ECF No. 71] at 7 n.2. *Cf. Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 69 (D. Conn. 2019) (denying cross motions for summary judgment on Section 3604(c) claim; distinguishing circumstances where "courts have found that statements of landlords or apartment managers provided a basis for liability under § 3604(c) at the summary judgment stage" in cases that "involved statements by

---

[9] Plaintiff does not move for summary judgment on his hostile environment harassment claim, although that claim is pled in the Complaint as also arising under Section 3604(c), among other Fair Housing Act provisions and regulations.

individuals who had direct control over the plaintiffs' ability to live in a particular home" or "uncontroverted facts").

Given the facts as they were presented in the parties' motions, the Court finds there is a factual dispute about whether Bedi acted as a landlord or property manager (or, relatedly, as addressed below with respect to Vermillion's vicarious liability, as an agent of Vermillion with either actual or apparent authority), as well as about the extent of his control over Plaintiff's tenancy, and therefore whether Bedi's statements in his text messages were made with respect to a rental or sale as required by Section 3604(c). Plaintiff's evidence that Bedi acted as property manager such that his text messages were sent with respect to Plaintiff's rental is addressed above. Defendants point to evidence (addressed in more detail below as to Vermillion's vicarious liability) that Vermillion did not employ Bedi or authorize him to act as a property manager, did not authorize Mrs. Bedi to delegate her property management responsibilities to Bedi, that Plaintiff specifically asked Mrs. Bedi to have her husband, Bedi, contact Plaintiff going forward, and that Vermillion and Mrs. Bedi did not know about the text messages at issue in this case. To that end, Plaintiff acknowledges the "with respect to" language of the statute "focuses on the speaker's relationship to the listener's housing" and "[a] speaker with power over the listener's housing necessarily has power over the listener." Plaintiff's Motion [ECF No. 71] at 5-6; *cf. Watters,* 48 F.4th at 787-88 ("it stands to reason that the behavior of a defendant who exercises authority over a plaintiff's housing rights would also bear more consideration in a fair

housing case"). For at least these reasons, Bedi's role in this case with respect to Plaintiff's tenancy is disputed.

Plaintiff says "[t]here can be no dispute that [Bedi's] statements were made with respect to [Plaintiff's] tenancy" based on certain language used in the text messages and because Plaintiff and Bedi "had no reason other than Vermilion's business to communicate." *See* Plaintiff's Motion [ECF No. 71] at 5-6, 11-12. The text messages are not written in a straightforward manner, and the context in which they were sent is not entirely clear. Were they part of a long-running racially charged harangue between Plaintiff, Mrs. Bedi, and Bedi, *see* Defendants' Response [ECF No. 77] at 5-6, or were they also with respect to Plaintiff's tenancy, or both? This depends in part on the extent of Bedi's authority or control over Plaintiff's tenancy which is hotly disputed. Under these circumstances, interpretation of the significance or meaning of the text messages is a fact that should be left to a jury. In the Court's view, a reasonable jury might or might not find Bedi's texts were sent with respect to Plaintiff's rental of Vermillion's apartment within the meaning of the statute. Accordingly, the Court denies Plaintiff's Motion for summary judgment as to Bedi's liability for the alleged discriminatory statements.

## 2. The Court denies summary judgment for both parties as to Vermillion's vicarious liability for Bedi's statements.

Defendants argue they are entitled to summary judgment that Vermillion is not vicariously liable for Bedi's conduct under 24 C.F.R. § 100.7(a)(ii) and (b). Defendants' Motion [ECF No. 68] at 7-10. Plaintiff also seeks summary judgment as

to Vermillion's vicarious liability under 24 C.F.R. § 100.7(b) for Bedi's discriminatory statements. Plaintiff's Motion [ECF No. 71] at 8-13.[10]

Under 24 C.F.R. § 100.7(b), "[a] person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law." *Id.* As there appears to be no dispute that Bedi was not Vermillion's employee, *see* Plaintiff's Response to Defendants' SOMF [ECF No. 81] at ¶ 14, vicarious liability turns on whether Bedi was Vermillion's agent. For purposes of Defendants' Motion for summary judgment, Defendants do not contest that Bedi was Vermillion's agent. Defendants' Motion [ECF No. 68] at 9 ("But for the time being, and for the sake of argument, hypothetically assume Bedi was Vermillion's agent").[11] Instead, Defendants say "the critical analysis for the Court is to determine whether the wrongful conduct fell within the agent's scope of his agency duties." *Id.* Defendants argue Bedi's sending of allegedly discriminatory text messages to Plaintiff did not fall within the scope of his agency relationship because a "reasonable agent" would know that its principal did not authorize such text

---

[10] 24 C.F.R. § 100.7(a)(ii) addresses direct liability, not vicarious liability. *Id.* ("A person is directly liable for: . . . (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct."). Although this regulation is cited in the Complaint, *see* [ECF No. 1] at ¶ 29, Plaintiff now says he does not assert Vermillion is liable for Bedi's conduct under this regulatory provision, which requires Vermillion's knowledge (actual or constructive) of Bedi's statements. *See* Plaintiff's Response [ECF No. 80] at 8.

[11] Although Defendants do not seek summary judgment on these grounds, Defendants argue that whether Bedi was Vermillion's agent is a disputed factual issue. *See* Defendants' Response [ECF No. 77] at 7-8.

messages and therefore Vermillion is not liable for Bedi's conduct even if Bedi was acting as Vermillion's agent. *Id.* at 9-10.

Plaintiff also seeks summary judgment as to Vermillion's vicarious liability for Bedi's conduct. Plaintiff says there is no factual dispute that Bedi was Vermillion's agent based on his conduct helping with maintenance issues, assisting with tenant communications and rent payments, his involvement with Plaintiff's eviction, and otherwise holding himself out as Vermillion's point of contact. *Id.* at 9-10 (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999)). Plaintiff also says there is no dispute that Bedi's discriminatory statements were made "within the scope of" Bedi's "point of contact/collect the rent role." *Id.* In addition, Plaintiff says summary judgment is appropriate under a different legal theory as to scope because the existence of the agency relationship aided Bedi in harassing Plaintiff. *Id.* at 11-12.

The Fair Housing Act encompasses vicarious liability and "[t]raditional vicarious liability rules apply, which 'ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.'" *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also* 24 C.F.R. § 100.7(b). A finding of vicarious liability must be "consistent with agency law." 24 C.F.R. § 100.7(b). Whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law. *City of Chicago v. Matchmaker Real Est. Sales Ctr., Inc.*, 982 F.2d 1086, 1097 (7th Cir. 1992). "Questions about agency are typically reserved for the jury unless the undisputed facts are insufficient to establish agency as a matter of law." *See Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, 2025

29

WL 975967, at *43 (N.D. Ill. Mar. 31, 2025) (citing *Harris*, 183 F.3d at 1054), *opinion clarified on other grounds*, 2025 WL 3306306 (N.D. Ill. July 9, 2025).[12]

Plaintiff contends the evidence "conclusively established that [Bedi] was Vermillion's agent" relying primarily on *Harris*. Plaintiff's Motion [ECF No. 71] at 9-10. *Harris* does not support Plaintiff's position that he is entitled to summary judgment as a matter of law on this issue. In *Harris*, the district court granted summary judgment for the defendant owners on a discriminatory statement claim based on statements made by a tenant who assisted the owners with tasks such "keeping spare keys of all the units, receiving rent checks, and showing vacant apartments to prospective tenants." *Id.* at 1047. On appeal, the Ninth Circuit reversed because "there are facts from which a jury reasonably could find that [the tenant] is an agent of the [owners]." *Id.* at 1054-55 (referring to plaintiff's evidence that tenant assisted the owners with "collecting rent checks and showing vacant units to prospective tenants" while defendants pointed to evidence "that they don't pay [the tenant] or offer her any discount on rent" in support of their "contention that the [tenant] is not their agent or employee"). In other words, the court in *Harris* found evidence similar to that relied on by Plaintiff here created a factual dispute as to agency, not that summary judgment for the plaintiff was warranted on such facts. Thus, *Harris* does not support Plaintiff's position that the evidence presented resolves

---

[12] Defendants cite authority addressing agency under Illinois law but as noted above, the existence of an agency relationship under the Fair Housing Act must be decided under Federal law. *See* Defendants' Response [ECF No. 77] at 7-8. Nevertheless, both Illinois and Federal law are in agreement that agency issues are typically fact questions reserved for the jury. *See id.* (citing cases for this proposition applying Illinois law).

all factual disputes as to the agency question in this case. Like in *Harris*, Plaintiff identified evidence that Bedi helped Mrs. Bedi with certain tasks at the Vermillion properties while Defendants point to evidence that Vermillion did not employ Bedi and that he was not authorized as Vermillion's agent.

As discussed above, the parties also point to competing evidence about Bedi's apparent authority to act on Vermillion's behalf including with respect to the text messages sent by Bedi to Plaintiff.[13] *See Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998) ("apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.") (quoting Restatement (Second) of Agency § 27); *see Hamilton v. Svatik*, 779 F.2d 383, 388 (7th Cir. 1985) (affirming jury verdict against defendant sister notwithstanding that she took no actions against plaintiff where it was undisputed that she was sole owner of building and that her brother, who engaged in the discriminatory conduct, acted as

---

[13] Again, Plaintiff cites evidence that Vermillion identified Bedi as its agent including with respect to Plaintiff's eviction. Defendants cite Dr. Sodhi's testimony that Vermillion did not know Mrs. Bedi asked her husband for help and Vermillion did not authorize Mrs. Bedi to delegate her authority in managing the properties. *See* [ECF No. 79-4] at 22-29. The parties both reference Mrs. Bedi's descriptions of her dealings with her husband, although they characterize the significance of the testimony differently, including Mrs. Bedi's testimony that "once in a while" she asked Bedi to help pick up a rent check or with maintenance issues, that Bedi helped her because he was her husband and had a moral obligation to do so, that she did not view this as granting Bedi permission or authorization with respect to the properties, and that she never told Dr. Sodhi that she occasionally asked Bedi for help. *See* [ECF No. 72-2] at 23-28. Based on this conflicting and competing evidence, whether Bedi acted with apparent authority as Vermillion's agent when sending the text messages is a disputed question of fact.

her agent) (citing *Izard v. Arndt,* 483 F.Supp. 261, 263 (E.D.Wis.1980) as holding husband liable for his wife's discriminatory refusal to rent because wife "had been acting as his agent and her actions were within the scope of her apparent authority").

Thus, whether Bedi was Vermillion's agent acting within the scope of his authority for purpose of vicarious liability is a classic jury question. Similar to what the court explained in *Harris*, there are facts from which a jury *could* reasonably find that Bedi acted Vermillion's agent. There also are facts that go the other way. Whether or not Bedi was Vermillion's agent for purposes of vicarious liability is a factual dispute that cannot be resolved at summary judgment. This is a sufficient basis for denying Plaintiff's Motion as to Vermillion's vicarious liability. The Court also notes that Plaintiff does not identify any relevant authority where an agent relationship was found at summary judgment.[14]

Turning to Defendants' Motion, Defendants say summary judgment is warranted in their favor as to Vermillion's vicarious liability because "there is no evidence that Vermillion knew about the texts or ratified them in any way." Defendants' Motion [ECF No. 68] at 9-10; *see* Defendants' Resp. to Plaintiff's Motion [ECF No. 77] at 9. This argument is undercut by the regulation, which provides that a principal can be vicariously liable for discriminatory housing practices by an agent "regardless of whether the person knew or should have known of the conduct . . ." 24

---

[14] Plaintiff also cites *United States v. Hylton*, 944 F. Supp. 2d 176, 191–92 (D. Conn. 2013), *aff'd*, 590 F. App'x 13 (2d Cir. 2014), but as Plaintiff acknowledges, the court's agency findings in *Hylton* were made after a bench trial and not at summary judgment. *See* Plaintiff's Motion [ECF No. 70] at 9-10.

C.F.R. § 100.7(b). "As a matter of well-settled agency law, a principal may be held liable for the discriminatory acts of his agent if such acts are within the scope of the agent's apparent authority, even if the principal neither authorized nor ratified the acts." *Matchmaker Real Est. Sales Ctr.*, 982 F.2d at 1096 (citing *Coates v. Bechtel*, 811 F.2d 1045, 1051 (7th Cir.1987)).

Defendants also argue Bedi's alleged discriminatory texts do not fall within the scope of his agency authority because a principal would not authorize its agent to make discriminatory texts or to violate the law. *See* Defendants' Motion [ECF No. 68] at 10; Defendants' Resp. [ECF No. 77] at 9-10. The Court disagrees. "A principal cannot free itself of liability by delegating to an agent the duty not to discriminate." *See Matchmaker Real Est. Sales Ctr.*, 982 F.2d at 1096-97 (citing *Green v. Century 21,* 740 F.2d 460, 465 (6th Cir. 1984)) (affirming vicarious liability under Fair Housing Act even where evidence showed principal had instructed agents not to discriminate). In addition, in the Court's view the evidence is disputed as to the scope of Bedi's authority with respect to the Vermillion properties and whether Bedi's statements in his text messages fell within the scope of that authority. For instance, Plaintiff testified that no one told him Bedi was a manager or agent for Vermillion, but Plaintiff also says Bedi's number was listed on his lease. *See* Plaintiff's Response to Defendants' SOMF [ECF No. 81] at ¶ 17. Plaintiff acknowledges he accused Mrs. Bedi of being racist and asked Mrs. Bedi to have Bedi contact him going forward, but Plaintiff also points to evidence that Mrs. Bedi asked for and received Bedi's help with maintenance and communicating with tenants, including with Plaintiff.

33

Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 13, 31; Plaintiff's Response to Defendants' SOAF [ECF No. 88] at ¶¶ 13, 17. Defendants dispute that Bedi collected rent payments from Plaintiff, while Plaintiff points to evidence that Mrs. Bedi asked Bedi to help get Plaintiff to pay his rent. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 32; Plaintiff's Response to Defendants' SOAF [ECF No. 88] at ¶ 20. Plaintiff says Bedi testified (in a prior deposition in another litigation) that he handled all day-to-day operations of Vermillion, while Defendants object to that testimony as hearsay. Defendants' Resp. to Plaintiff's SOMF [ECF No. 78] at ¶ 14. Defendants also point to Dr. Sodhi's testimony that Vermillion did not employ Bedi or hire Bedi to serve as a manager or agent for the Vermillion properties. *See* Defendants' SOAF [ECF No. 79] at ¶¶ 6-8; Defendants' SOMF [ECF No. 69] at ¶ 14. Yet Bedi served the Landlord's Five Day Notice of Plaintiff's eviction and signed that form, which identified Bedi as the agent of the landlord. Defendants Resp. to Plaintiff's SOMF [ECF No. 78] at ¶¶ 57-60.[15]

Plaintiff says Dr. Sodhi's testimony that Bedi was not Vermillion's agent is inadmissible because Dr. Sodhi lacks personal knowledge of whether Mrs. Bedi asked

---

[15] Plaintiff argues summary judgment should be granted in his favor because Defendants do not respond to Plaintiff's alternate argument that Bedi's acted within the scope of his agency under an "aided by his agency" relationship theory. As discussed above, however, the initial question of whether Bedi was Vermillion's agent is a factual dispute that must be resolved by a jury before the issue of scope can be resolved. *Cf. Atl. Cas. Ins. Co. v. Damian Concrete, Inc.*, 2018 WL 3208482, at *3 (N.D. Ill. June 29, 2018) ("Even where a motion for summary judgment is unopposed, the burden still rests with the movant to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.") (citing *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). Defendants' failure to address the "aided by agency" theory does, however, provide another basis for denying Defendants' summary judgment motion as to Vermillion's vicarious liability.

Bedi for his help managing the Vermillion properties. Plaintiff's Reply [ECF No. 87] at 6; Plaintiff's Response to Defendants' SOMF [ECF No. 81] at ¶ 14. At Dr. Sodhi's fact witness deposition, he testified that he did not know whether Mrs. Bedi had her husband, Bedi, help her manage the Vermillion properties. *See* Plaintiff's Response to Defendants' SOMF [ECF No. 81] at ¶ 14 (citing Dr. Sodhi's 3/27/2024 Deposition [ECF No. 72-1]). At Dr. Sodhi's deposition as Vermillion's Rule 30(b)(6) witness, he testified that Vermillion did not authorize or hire any additional managers or agents at the properties, Vermillion was not aware of anyone else besides Mrs. Bedi managing or co-managing the properties, and Mrs. Bedi was not authorized to hire an employee or agent. *See* Defendants' SOMF [ECF No. 69] at ¶ 14 (citing Vermillion's Rule 30(b)(6) testimony from Dr. Sodhi); Dr. Sodhi's 30(b)(6) Deposition [ECF No. 79-4] at 22-29.

Although Dr. Sodhi may lack personal knowledge of Mrs. Bedi's actions, Dr. Sodhi's testimony nonetheless provides factual support for Defendants' position that Vermillion did not employ Bedi, authorize Bedi to act as Vermillion's agent, or authorize Mrs. Bedi to seek Bedi's help in managing Vermillion's properties. Whether or not Dr. Sodhi's testimony is credible or reasonable in light of the help Mrs. Bedi says Bedi provided with respect to the Vermillion properties or the other evidence regarding Bedi's conduct with respect to Plaintiff or the Vermillion properties is a factual question that must be resolved by a jury. *See Harris*, 183 F.3d at 1054–55.[16]

---

[16] As Plaintiff acknowledges, "[n]ormally, testimony-even ludicrous testimony-is enough to defeat summary judgment because only juries can resolve credibility contests between competing witnesses." *See* Plaintiff's Reply [ECF No. 87] at 6.

For all the above reasons, summary judgment is denied to as to Vermillion's vicarious liability for Bedi's conduct.

### 3. The Court grants in part and denies in part the parties' cross motions for summary judgment on Defendants' affirmative defenses and counterclaim.

Plaintiff seeks summary judgment on Defendants' statute of limitations affirmative defense. Plaintiff's Motion [ECF No. 71] at 14. Defendants appear to also seek summary judgment on that affirmative defense by arguing Plaintiff's "habitability" claims are time-barred (or barred by *res judicata* or the *Rooker-Feldman* doctrine because Plaintiff previously asserted habitability and constructive eviction claims in a state court eviction proceeding and the state court rejected Plaintiff's claims). Defendants' Motion [ECF No. 68] at 6-7.

First, as to the statute of limitations defense, the parties agree the Fair Housing Act's two-year limitations period applies to Plaintiff's claims. *See* 42 U.S.C.A. § 3613 ("An aggrieved person may commence a civil action in an appropriate United States district court . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, . . . whichever occurs last . . ."). Defendants' statute of limitations defense asserts "some of the alleged actions or inactions complained of occurred beyond the two-year statute of limitations set forth under the Federal Fair Housing Act." Answer [ECF No. 11] at 7.

Plaintiff says his Fair Housing Act claims are based on Bedi's alleged discriminatory text messages and therefore are timely because at least 15 of those messages were sent after August 8, 2021, two years before Plaintiff filed his lawsuit on August 8, 2023. Plaintiff's Motion [ECF No. 71] at 14. Defendants do not dispute

36

that some of the text messages were sent within the applicable two-year limitation period. Instead, Defendants point to alleged "habitability" issues in paragraph 25 of the Complaint and say those habitability concerns, related to a backed-up sink in Plaintiff's unit, occurred in April or May 2021 and thus fall outside the two-year limitations period. Defendants' Response [ECF No. 77] at 11. *See also* Complaint [ECF No. 1] at ¶ 25 "Bedi's oral and written racial abuse was compounded by his refusal to promptly address habitability conditions like sewage backing up in the sink of the unit."). Plaintiff responds that his Fair Housing Act claims are not based on habitability issues or constructive eviction and instead, as pled, are based on hostile environment harassment and discriminatory statements. Plaintiff's Reply [ECF No. 87] at 7; Plaintiff's Response [ECF No. 80] at 5-6 (Plaintiff "has no habitability claims" and "has never alleged that Defendants' failure to remediate the habitability issues was based on race").

Plaintiff's Motion seeking summary judgment on Defendants' statute of limitations affirmative defense is granted. Although Defendants may have identified a factual basis that "some of the alleged actions or inactions complained of" occurred outside the limitations period, specifically with regards to habitability concerns, that would not provide a legal basis for judgment in Defendants' favor, as Plaintiff has a timely claim based on text messages sent within the limitations period that were part of a continuing pattern of conduct. To the extent Defendants' Motion seeks summary judgment on the statute of limitations affirmative defense, it is denied. Defendants explain their statute of limitations defense is based on the allegation referencing

habitability issues and, as Plaintiff clarified, the Complaint does not state a Fair Housing Act claim based on habitability issues. Whether or not evidence related to habitability issues will be admissible at trial for another purpose is an issue not currently before the Court and is properly reserved for pretrial proceedings.

Plaintiff seeks summary judgment on Defendants' *res judicata* defense. Plaintiff's Motion [ECF No. 71] at 15-16. Defendants also seek summary judgment on this defense as well as based on the *Rooker-Feldman* doctrine. Defendants' Motion [ECF No. 68] at 6-7. Defendants' *res judicata* defense states "[s]ome of the allegations in this federal pleading were previously adjudicated" in the eviction proceeding against Plaintiff in Cook County pleading and "all of Plaintiffs (*sic*) current pleadings could have been litigated in Cook County." Answer [ECF No. 5] at 7-8.

Defendants' *res judicata* defense, as well as their *Rooker-Feldman* argument, is based on an erroneous interpretation that the Complaint in this case raises the same constructive eviction and habitability issues that were previously resolved in the eviction case. As discussed above, Plaintiff does not allege a discriminatory failure to remediate plumbing issues and does not assert a claim for constructive eviction, which are the claims Defendants say were previously decided in the state court eviction proceeding. *See* Plaintiff's Motion [ECF No. 71] at 15-16 and n.8; Plaintiff's Reply [ECF No. 87] at 7; Plaintiff's Response [ECF No. 80] at 5-6. *See Torrence v. Parkway Gardens for Am. Apartment Mgmt.*, 2006 WL 8461519, at *3-4 (N.D. Ill. May 31, 2006) (rejecting defendant's argument that plaintiff's Fair Housing Act claims were barred by *res judicata* or *Rooker-Feldman* doctrine because plaintiff's claims "do

not allege that plaintiff was injured by her eviction and they do not seek damages for her eviction" noting plaintiff "avoided asserting causes of action or seeking remedies based on plaintiff's eviction and the state court's eviction order. . . Instead, she seeks to redress wrongs that preceded the eviction and are therefore independent from the eviction action and the state court order.").

Moreover, although Defendants suggest *res judicata* applies to bar Plaintiff's claims because Plaintiff could have brought his discrimination claims in the state court eviction proceeding, Defendants cite no support for this position and fail to respond to Plaintiff's contrary authority. *See* Plaintiff's Motion [ECF No. 71] at 15-16 (citing *Fuyyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 919-20 (N.D. Ill. 1999)); *Torrence*, 2006 WL 8461519, at *4 (citing *Fuyyumi* as holding "because 735 ILCS 5/9-106 precluded plaintiffs from raising claim in state court, res judicata did not bar its consideration in federal court"). Accordingly, the Court denies Defendants' Motion seeking summary judgment on the *res judicata* affirmative defense or based on the *Rooker-Feldman* doctrine and grants Plaintiff's Motion for summary judgment on the *res judicata* affirmative defense. Plaintiff's claims can properly be litigated in this case.

Plaintiff also seeks summary judgment on Defendants' First Amendment affirmative defense. Plaintiff's Motion [ECF No. 71] at 14-15. Plaintiff says summary judgment is warranted on this affirmative defense because "the First Amendment does not protect statements that violate § 3604(c) because its protection is relaxed for commercial speech." *Id.* (citing *Campbell v. Robb*, 162 F. App'x 460, 470 (6th Cir.

2006) in support of proposition that "to the extent [Bedi's] statements violate § 3604(c) or constitute racial harassment under Illinois law, no First Amendment protection would apply"). Defendants dispute that Bedi's statements in his text messages are commercial speech. Defendants' Response [ECF No. 77] at 12. In Reply, Plaintiff does not address the question of whether Bedi's text messages are commercial speech. Plaintiff's Reply [ECF No. 87] at 7.

As the Sixth Circuit explained in *Campbell v. Robb*, "[b]ecause the degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech, we must first determine the proper classification of the [statements] at issue here." *Id.*, 162 F. App'x at 470 (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 65 (1983) and proceeding to analyze whether the statements challenged in the plaintiff's Section 3604(c) claim constitute commercial speech). The Court has concluded that questions of fact preclude summary judgment as to whether the alleged statements violate Section 3604(c) because there are factual disputes as to whether Bedi's statements were made with respect to Plaintiff's rental and whether Bedi was acting as Vermillion's agent. Accordingly, there are also disputed facts as to whether Bedi's statements in the text messages constitute commercial speech. For these reasons, Plaintiff's Motion seeking summary judgment as to the First Amendment affirmative defense is denied.

Plaintiff seeks summary judgment on Defendants' diminished capacity affirmative defense. Defendants' defense asserts Bedi "lacked, or had diminished

capacity to understand his statements or actions might be deemed offensive to Plaintiff" based on his medical treatment for stage four cancer. Answer [ECF No. 11] at 7. In response Defendants do not provide any legal authority or factual support for this affirmative defense but generally argue "[i]t should be up to the jury to decide whether Stage 4 metastatic cancer might cause a person to aggressively engage someone who calls his wife 'racist as hell'." Defendants' Response [ECF No. 77] at 13.

As the Court understands it, Defendants diminished capacity "defense" appears really to be an argument that there are disputed facts regarding whether Bedi acted with discriminatory intent. *Cf. Chew v. Hybl*, 1997 WL 33644581, at *8– 10 (N.D. Cal. Dec. 9, 1997) (rejecting defendant's intoxication defense as to discriminatory intent for Section 3604(a) claim) (defendants "argue that a reasonable jury could conclude . . . that [defendant Hybl] was incapable of forming a "specific intent" to discriminate because she was inebriated . . .The distinction between specific and general intent ordinarily arises in criminal cases. In the context of this case, . . . Defendants simply contest whether Ms. Hybl acted with discriminatory intent."). Because discriminatory intent is a required element of at least Plaintiff's claim under Section 3604(b), Defendants' argument regarding Bedi's capacity to act with discriminatory intent is not actually an affirmative defense.[17] *See Bell v. Taylor*, 827

---

[17] Plaintiff notes Section 3604(c) does not require a showing of discriminatory intent. *See* Plaintiff's Motion [ECF No. 71] at 7; *see Jancik v. Dep't of Hous. & Urb. Dev.*, 44 F.3d 553, 556 (7th Cir. 1995) ("no showing of a subjective intent to discriminate is therefore necessary to establish a violation of" Section 3604(c)). But the Court has already determined that other questions of fact preclude summary judgment for Plaintiff on the Section 3604(c) claim. Moreover, a showing of discriminatory intent is required to prevail on a claim under Section 3604(b) as well as for claims arising under Section 3617. *See Williams v. Vill. of Hazel Crest*, 2023 WL 3981302, at *3 (N.D. Ill. June 13, 2023) ("To state an intentional discrimination

F.3d 699, 704–05 (7th Cir. 2016) ("An affirmative defense 'limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case.' In other words, an affirmative defense is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true.' . . .") (a "denial of [plaintiff's] allegations" is "not an affirmative defense") (internal citations omitted). Accordingly, the Court strikes Defendants' diminished capacity affirmative defense.

Plaintiff also moves for summary judgment on Defendants' counterclaim seeking payment of the "back rent" previously awarded in the state court eviction proceeding. *See* [ECF No. 12]. Plaintiff argues *res judicata* prevents Defendants from relitigating the eviction case. Plaintiff's Motion [ECF No. 71] at 17-18. Defendants do not provide any substantive response to Plaintiff's argument, instead merely stating they "want the jury to know Plaintiff failed to pay rent that he owed to Vermillion and know the state Court ruled in favor of Vermillion." Defendants' Resp. [ECF No. 77] at 14. In the Court's view, Defendants essentially concede the counterclaim is barred by *res judicata* by acknowledging they "do not seek to have this Court relitigate the eviction order again" and because the sole relief sought in Defendants' counterclaim is the award of Defendants' back rent that was already adjudicated by

---

claim, i.e., 'disparate treatment' claim, Williams must plausibly allege that the Village had a discriminatory intent or motive.") (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)); *Walton v. Claybridge Homeowners Associaton, Inc.*, 191 F. App'x 446, 450 (7th Cir. 2006) ("To prevail under § 3617 [plaintiff] must show," inter alia, "(3) the defendants were motivated in part by an intent to discriminate"). Plaintiff has not argued that he is proceeding under a disparate impact theory and has not alleged or identified evidence of facts in support of such a theory. The Court takes no position on the relevance or admissibility of evidence about Bedi's health, as that issue is not currently before the Court.

the state court. *Id.* Accordingly, the Court grants Plaintiff's Motion for summary judgment on Defendants' counterclaim. The Court takes no position on the relevance or admissibility of evidence related to the eviction proceeding, as that issue is not currently before the Court.[18]

Finally, Defendants argue summary judgment should be awarded in Bedi's favor because any recovery against Bedi, who is deceased, is limited pursuant to 735 ILCS 5/2-1008(b)(2) to liability insurance proceeds that protect Bedi's estate and there is no such insurance. Defendants' Motion [ECF No. 68] at 12-13. As Plaintiff argues, this seems to be an affirmative defense, although it was not pled in Defendants' Answer. *See* Plaintiff's Response [ECF No. 80] at 8. In any event, Defendants rely on a reservation of rights letter from Vermillion's insurer, Certain Underwriters at Lloyd's London ("Underwriters"). *Id.* at 12 (citing Defendants' SOMF [ECF No. 69] at ¶ 20). Plaintiff disputes this letter shows Bedi's estate has no liability insurance because the letter states Bedi qualifies as an insured under the policy and that Underwriters will provide a defense to Bedi under a reservation of rights. Plaintiff's Resp. to Defendants' SOMF [ECF No. 81] at ¶ 20. Defendants do not respond to Plaintiff's arguments about the substance of the coverage letter. Defendants' Reply [ECF No. 86] at 11. Accordingly, the Court finds questions of fact remain as to whether Bedi's estate has applicable insurance and denies Defendants' Motion seeking summary judgment as to Bedi on this ground.

---

[18] The parties agree that Defendants have withdrawn the fourth affirmative defense of failure to exhaust administrative remedies. *See* Defendants' Response to SOMF [ECF No. 78] at ¶ 79. Thus, the fourth affirmative defense is dismissed.

## IV.    CONCLUSION

For all the above reasons, Defendants' Motion for Summary Judgment [ECF No. 67] is granted in part as to Plaintiff's negligence claim and denied in part as to Plaintiff's Fair Housing Act claims against Defendant Vermillion Investments, LLC and Defendant Sukhdarshan Bedi.

Plaintiff's Motion for Partial Summary Judgment [ECF No. 70] is granted in part as to Defendants' counterclaim, Defendants' *res judicata* affirmative defense, and Defendants' statute of limitations affirmative defense, denied in part as to Plaintiff's Fair Housing Act claims and Defendants' First Amendment affirmative defense. Defendants' diminished capacity affirmative defense is stricken and Defendants' affirmative defense as to exhaustion of remedies is dismissed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    January 16, 2026